STATE OF CONNECTICUT *v*. MARJORIE WHEATON.

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON and DALY, Js.

Argued January 5—decided February 10, 1944.

*Philip Reich,* with whom was *Sigmund L. Miller,* for the appellant (defendant).

*Lorin W. Willis,* with whom, on the brief, was *Otto J. Saur,* for the appellee (state).

DICKENSON, J. The complaint in this action contains two counts. In the first count the defendant is charged with practicing natureopathy without a license and administering therapeutic treatments to one Samuel Rome on March 10, 1943. In the second count she is charged with administering therapeutic treatments to one Henry Mayo on March 26, 1943, without a license. The case was tried to a jury who returned a verdict of guilty on the first count and not guilty on the second count. The defendant moved to set aside the verdict of guilty on the first count as contrary to law and to the evidence and inconsistent with the finding of not guilty on the second count, and that she be adjudged not guilty upon the verdict rendered. These motions were denied and the court imposed sentence.

The defendant has appealed from the denial of the motions and from the judgment and has assigned error in rulings on evidence, in comments by the state's attorney during argument and in the charge.

General Statutes, § 2775, prohibits the practice of or the attempt to practice natureopathy by an unlicensed person. Section 991e of the Cumulative Supplement of 1939 defines the practice of natureopathy as "the practice of the psychological, mechanical and material sciences of healing as follows: The psychological sciences, such as psycho-therapy; the mechanical sciences, such as mechano-therapy, articular manipulation, corrective and orthopedic gymnastics, neuro-therapy, physio-therapy, hydro-therapy, electro-therapy, thermo-therapy, photo-therapy, chromo-therapy, vibro-therapy, concussion and pneumato-therapy, and the material sciences, such as dietetics, and external applications; but shall not mean internal medication or the administering of any substance simulating medicine or the form of medicine, except dehydrated foods." The expression in both statutes is "practice." Complaint of a single therapeutic treatment by the means specified, standing alone, would not be a proper charge of a violation of the statute. *State* v. *Faatz,* 83 Conn. 300, 304, 76 Atl. 295. The second count was deficient in this respect, but in view of the verdict this is immaterial.

The defendant produced no witnesses and the jury could reasonably have found the following facts: No. 8 Elmwood Avenue, Bridgeport, has the appearance of being a single house on a corner in a residential section. Affixed to its porch railing was a sign which read: "Institute of Electro-Hydro-Therapeutic Treatments, Scientific Massage." In a window on the first floor was a sign which read: "Wheaton Health Institute, Pine Needle Baths, Bakes, Massage." A sign on

the front door read "Walk In." Inside the door was a large room in which were a desk and telephone. Beyond was a dressing room and adjoining this was a room with an examining table and with charts of the human body on the wall. A state police officer, Rome, acting on a complaint from the state license board went to the house on March 10, 1943, in plain clothes. He opened the door marked "Walk In" and entered the large room in which were the desk and telephone, and shortly thereafter the defendant entered. He saw no one else on the premises during his stay. He asked the defendant if she treated people "the same as a chiropractor does" and she said "Yes, be seated." At all times in her presence he feigned a limp. He did not otherwise complain of an ailment nor did she ask him if he had one. She conducted him to the dressing room and told him to strip to the waist. He did so and was led to the room containing the examining table and told to lie on this on his back. The defendant flexed his legs by bending the knees and ankles and then held the legs together and said "That's it." The officer asked her what she meant and she replied that one leg was two inches shorter than the other and this condition might cause kidney, liver and bladder troubles. She then had him lie prone and applied a heat lamp to his back. Following this she applied an ice-cold towel to it, massaged it with alcohol and ran an electric tube up and down his spine, causing a prickling sensation. She then had him sit up and flexed his shoulders and arms. She told him to come again in three days and that her fee was $3, which he paid. He asked her what to do in case of severe pain and was told to take aspirin before retiring. The officer was in good health when he went to the defendant and was suffering no ailments. He returned on March 26, entered the house and took a seat in the outer room.

Presently the defendant appeared and asked him how he felt. The defendant had no license to practice natureopathy. The use of electricity, heat, water, vibration and muscular articulation for therapeutic purposes constitutes such practice.

The main contention of the defendant is that these facts show but a single treatment, that this was not for therapeutic purposes and that in any event it was not enough to warrant a verdict of practicing nature-opathy, relying on *State* v. *Faatz,* supra. In that case it was said that the performance of one or more dental operations was by no means the same as practicing dentistry. There the question was one of pleading. The court pointed out (p. 304) that it was alleged in the complaint that the defendant performed dental operations, whereas the statute prohibited the practice of dentistry without a license to do so; that one might pull teeth without practicing dentistry; and that, on the other hand, "a man might engage in the practice of dentistry before he had performed a single dental operation." It added that one cannot be said to engage in the practice of dentistry "until he embarks in it, until he holds himself out as a dentist, either by a series of continuous acts, covert or open, or by advertising himself in some way as a dentist."

In the case before us the jury could have found that this was the defendant's home and the signs upon it her signs; that they were designed to invite the public to enter for the purpose of receiving therapeutic treatments; and that she in fact administered such treatments. The defendant's claim that the particular treatments she administered may be given to a person with no ailment and were not therapeutic in character because the patient was admittedly a healthy person is not tenable. She held herself out to give therapeutic treatments and purported to administer them.

As to the defendant's claim that the state failed to allege specifically that she held herself out as a natureopath so as to bring her case within the definition of practice set forth in *State* v. *Faatz,* supra, the allegation of practice was broad enough to admit evidence of advertising, it was not necessary to allege it specifically and there was in addition the evidence of treatments. The court did not err in denying the motion to set aside the verdict.

Various rulings admitting in evidence the outside signs and certain articles within the house are assigned as error. The main contention of the defendant as to these signs and articles is that they were not connected with her by evidence. As indicated by the finding recited above, there was evidence that the house appeared to be a single house; that one of the signs bore the defendant's name; and that she alone appeared, to administer treatments as advertised. She offered no evidence of possession or ownership in another and the jury could properly find that she was the occupant of the house and that the articles in the rooms where she administered treatment were part of her equipment. The evidence was properly admitted.

This leads us to a consideration of claims of error in relation to statements made by the state's attorney concerning the failure of the defendant to offer evidence. In argument he stated that the great difficulty in which the defendant's attorney "finds himself . . . is that he offers no testimony to refute anything that any State's witness has said." The defendant contends that this was in violation of General Statutes, § 6480, which prohibits comment by counsel to the court or jury on the failure of an accused to testify. A reference to the record printed in support of the assignment shows that the statement was made in reply to one by defendant's counsel demanding why the state had not

produced other persons who had been treated. The defendant claims, in brief, that the only person who could refute the state's witnesses was the defendant herself and hence the statement violated the statutory prohibition. Considering it in all its aspects we hold it did not. In the first place it was proper for the state's attorney to comment upon the absence of evidence other than the testimony of the accused herself. The remark was directed to the defendant's attorney and not to the defendant. The state's attorney was about to give an example of what he meant but was interrupted by defendant's counsel. When allowed to proceed, he referred in his remark to lack of evidence as to one of the signs, defendant's counsel having asked the jury how they were to know this had not been there before the defendant was born. As we have indicated, the sign was an important issue in the case and the fact, if it existed, that it belonged to, or related to, another person might well have been testified to by witnesses other than the defendant. We may not say it was error for the court to allow the remark to stand with its amplification.

The claim pressed in the brief that the court erroneously charged that no evidence was presented by the defendant, because of evidence she elicited on cross-examination, needs little discussion. The defendant presented no witnesses and in its preliminary instructions the court charged the jury that they must consider all of the evidence in determining whether guilt was proved beyond a reasonable doubt. While the court's charge as to the defendant's failure to testify might have been in more detail, it did state: "Provided that the State has supported its burden of proof, then the jury may throw the inference arising from the failure of the accused to testify in her own defense into the scales to determine the ultimate question of guilt

or innocence." See *State* v. *McDonough,* 129 Conn. 483, 487, 29 Atl. (2d) 582. We cannot hold that the defendant was prejudiced by the charge.

The only remaining assignment of error that merits consideration is the claim that the court's answer to a question submitted by the jury as to whether "the administering of electricity, water, heat, vibration and articular manipulation by themselves constituted Natureopathy or is there a doubt?" was not responsive. The court answered the question in substance by stating that to engage in natureopathy one must hold oneself out as a natureopath either by a series of acts or by advertising in some way as a natureopath and that the question for them was whether the accused held herself out to the public as a duly qualified natureopath embarked in the profession. The court then repeated the definition of the various therapies named in the statute in reference to the use of electricity, water, heat, vibration and manipulation. The instruction was responsive and correct, and, as we have indicated, the allegation of practice was properly supported by evidence of advertising and the court was not in error in including this in its definition of the crime charged.

There is no error.

In this opinion the other judges concurred.