STATE OF CONNECTICUT *v.* RAVEN RUIZ

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued April 13—decision released July 6, 1976

*Ralph L. Palmesi,* with whom was *Salvatore C. DePiano,* for the appellant (defendant).

*Domenick J. Galluzzo,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

BARBER, J. The defendant was charged in an information with one count of assault in the first degree in violation of § 53a-59 (a) (1) of the General Statutes. Upon a trial to a jury, he was found guilty of the crime of assault in the second degree in violation of § 53a-60 (a) (2) of the General Statutes and sentenced to five years' imprisonment. On appeal from that judgment he filed thirteen assignments of error, but in his brief he has pursued only five issues, claiming that the court erred: (1) in its charge to the jury; (2) in denying a motion for a mistrial; (3) in denying a motion to dismiss the information; (4) in denying a motion for a directed verdict of acquittal; and (5) in sentencing the defendant. Those assignments of error not briefed are considered abandoned. *State* v. *Williams,* 170 Conn. 618, 619, 368 A.2d 140.

The information arose out of an incident which occurred in Bridgeport on the evening of April 21, 1973, in which Julio Echevarria was apparently shot through the neck. The finding reveals that the state offered evidence and claimed to have proved the following facts: On the evening in question, Echevarria was one of seven occupants riding in a car owned and being operated by his brother, Eric Lugo. At the corner of Jane Street and Noble Avenue, the Lugo vehicle stopped for a stop sign and was struck from behind by an automobile driven by the defendant. After the collision, Echevarria got out of the Lugo vehicle to see what had happened, and approached the defendant's car. When Echevarria was about three feet from the passenger's door of the defendant's car, Lugo saw the defendant extend his right arm and point his right hand at Echevarria. Lugo then saw a flash of gunfire come out of the defendant's hand, heard the sound of a gunshot come from within the defendant's car, and saw Echevarria raise his hand and clutch his throat. Lugo went to the side of the defendant's automobile and said: "Okay, you fired on my brother, but now you stay there and wait for the police." At this point the defendant backed up his car and left the scene. Lugo took his brother to a hospital, where it was discovered that Echevarria had sustained a penetrating injury to his neck, which appeared to be a gunshot wound. Exploratory surgery disclosed a tract going through the neck, beneath the skin and one of the muscles, in close proximity to the carotid artery, jugular nerve, and vagus nerve. Echevarria was in the hospital for about two weeks.

The state relied primarily on the testimony of Eric Lugo for a description of the shooting because

Echevarria is an illiterate deaf-mute and was found incompetent to testify at trial. The defendant testified in his own behalf, offering a different version of the incident. The finding reveals that the defendant offered evidence and claimed to have proved the following: The incident occurred, not at the corner of Jane Street and Noble Avenue, but at the corner of William Street and Arctic Street. No contact was made between the two cars; the defendant had pulled up behind the Lugo vehicle at a stop sign, stopped three or four feet behind the Lugo vehicle, and waited approximately two minutes for the Lugo vehicle to proceed. Echevarria then got out of the Lugo vehicle, and, as he approached the defendant's car, the defendant heard a sound like a firecracker. There had been bad blood between the defendant and Lugo for about a year prior to April 21 because of an incident in which the defendant "got fresh" with Lugo's wife. Echevarria was shot by accident and sustained a merely superficial wound.[1] The defendant had never owned a gun, no gun or weapon was found in his automobile or in his apartment, and no paraffin tests were performed by the police to determine whether the defendant had fired a gun. The bullet which struck Echevarria was never found. The defendant was born left-handed and, except for writing, performed everything else with his left hand.

## I

Consideration of the defendant's claims of error addressed to the court's charge to the jury requires a brief preliminary discussion of the assault stat-

---

[1] The claim that Echevarria was shot by accident is not elaborated upon in the finding. The defendant apparently claims that Echevarria was struck by a bullet fired by Lugo and intended for the defendant.

utes. Under our penal code, which became effective in 1971, assault is classified as first, second or third degree, the category depending upon the intent of the actor, the use of a deadly weapon or dangerous instrument, and the severity of the resultant injuries. General Statutes §§ 53a-59 through 53a-61. Section 53a-59 specifies three ways in which first degree assault may be committed, setting forth each way in a separate subsection: (1) by intentionally causing serious physical injury with a deadly weapon or dangerous instrument; (2) by maiming; or (3) by reckless conduct, "under circumstances evincing an extreme indifference to human life," which "creates a risk of death to another person" and which causes serious physical injury.[2] Second degree assault, as defined by § 53a-60, can be committed in five ways, of which three are pertinent to the present appeal: (1) by intentionally causing serious physical injury; (2) by intentionally causing physical injury by means of a deadly weapon or dangerous instrument; or (3) by recklessly causing serious physical injury by means of a deadly weapon or a dangerous instrument. Third degree assault can also be committed in three ways as specified in § 53a-61: (1) by intentionally causing physical injury; (2) by recklessly causing serious phys-

---

[2] "[General Statutes] Sec. 53a-59. ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person. (b) Assault in the first degree is a class B felony."

ical injury; or (3) by causing physical injury, with criminal negligence, by means of a deadly weapon or dangerous instrument.

The information specifically charged the defendant with committing first degree assault in the way first described, alleging that the defendant, "with intent to cause serious physical injury to one Julio Echevarria did cause serious physical injury to said Julio Echevarria with a deadly weapon, to wit: a pistol, in violation of § 53a-59 (a) (1) of the Connecticut General Statutes." In its charge to the jury, however, the court read all of the first degree assault statute and, after instructing the jury that the provisions pertaining to maiming were not applicable, explained in detail the subsections relating both to intentional assault and to reckless conduct. The court also instructed the jury that they should consider, as lesser included offenses, second degree assault committed either intentionally or recklessly, and third degree assault, committed intentionally, recklessly, or with criminal negligence. The defendant has assigned error in this portion of the charge, claiming that the state had limited itself to proving intentional rather than reckless assault, that there was no evidence of recklessness on the part of the defendant, and that neither second degree assault by recklessness nor third degree assault by recklessness or criminal negligence is a lesser included offense in a charge of first degree intentional assault.

A defendant is constitutionally entitled "to be informed of the nature and cause of the accusation" against him. Conn. Const., art I § 8; U.S. Const., amend VI. "Nothing is more elementary in criminal law than that an accused is required to defend only against the charge alleged." *State* v. *Genova*, 141

Conn. 565, 572, 107 A.2d 837 (opinion of *O'Sullivan, J.,* dissenting). Under our practice, it is sufficient for the state to set out in the information the statutory name of the crime with which the defendant is charged, leaving to the defendant the burden of requesting a bill of particulars more precisely defining the manner in which the defendant committed the offense. Practice Book §§ 495, 498; *State* v. *Davis,* 141 Conn. 319, 106 A.2d 159; see *State* v. *Brown,* 163 Conn. 52, 61, 301 A.2d 547. Once such a bill of particulars has been filed or where, as in the present case, the information is sufficiently precise that no bill of particulars is needed, the state is limited to proving that the defendant has committed the offense in substantially the manner described. *State* v. *Beaulieu,* 164 Conn. 620, 625, 325 A.2d 263; *State* v. *DiLorenzo,* 138 Conn. 281, 284–85, 83 A.2d 479; *State* v. *Scott,* 80 Conn. 317, 321, 68 A. 258; cf. *State* v. *Cari,* 163 Conn. 174, 183–84, 303 A.2d 7. In the event the state offers evidence to prove that the defendant committed an offense in a manner other than that set out in the information and bill of particulars, the trial court may grant the state an amendment to conform the evidence to the information, but must ensure that no prejudice to the defendant results. See *State* v. *Rafanello,* 151 Conn. 453, 456, 199 A.2d 13; see also Practice Book § 525.

In the present case, no amendment was requested, nor does it appear that the state offered any evidence tending to prove that the defendant had acted recklessly. Under these circumstances, the issue is whether a charge to the jury on first degree assault by recklessness, when the defendant is specifically charged with intentional first degree assault, is prejudicial to the defense.

Generally, the intent of the actor is a question for the trier of fact, and intent may be inferred from conduct; *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447; *State* v. *Pallanck,* 146 Conn. 527, 531, 152 A.2d 633; and it is apparent that the basic action attributed by the state to the defendant—the firing of a handgun at Julio Echevarria—might, under various circumstances, be characterized as an intentional infliction of serious physical injury or as reckless conduct under circumstances evincing an extreme indifference to human life. Our penal code, however, expressly defines the terms "intentionally" and "recklessly" in such a manner as to render them mutually exclusive.[3]   A person acts "intentionally" when his conscious objective is to cause a specific result; § 53a-3 (11); a person acts "recklessly" when he consciously disregards a substantial risk that a specific result will occur. General Statutes § 53a-3 (13). Evidence which a defendant might offer to prove that he did not act "intentionally" may be inconsistent with or even contradict a claim

---

[3] "[General Statutes] Sec. 53a-3. DEFINITIONS. Except where different meanings are expressly specified, the following terms have the following meanings when used in this title: . . . (11) a person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct; . . . (13) a person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation; (14) a person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

that he did not act "recklessly." Therefore, before being subject to conviction for acting recklessly, the defendant must first be informed that recklessness is among the charges pending against him. The court erred in charging the jury on first degree assault by recklessness when the defendant was specifically charged with intentional first degree assault.

The court also erred in instructing the jury that second degree assault by recklessness or third degree assault by recklessness or criminal negligence were lesser included offenses in the charge of intentional first degree assault. "The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense in the manner described in the information or bill of particulars, without having first committed the lesser. If it is possible, then the lesser violation is not an included crime." *State* v. *Brown,* 163 Conn. 52, 61–62, 301 A.2d 547; *State* v. *Blyden,* 165 Conn. 522, 529–30, 338 A.2d 484. The only offense alleged in the information was intentional first degree assault in violation of § 53a-59 (a) (1). To violate that section, it is not necessary to act either recklessly or with criminal negligence, and, therefore, second degree assault by recklessness and third degree assault by recklessness or criminal negligence were not lesser included offenses.

The crime of which the defendant was convicted, however, does qualify as a lesser included offense in the offense charged in the information. As

revealed by the judgment file,[4] the jury found the defendant guilty of violating § 53a-60 (a) (2), which states that "[a] person is guilty of assault in the second degree when . . . with intent to cause physical injury to another person, he causes such injury . . . by means of a deadly weapon or a dangerous instrument." The jury obviously found that Echevarria did not suffer "serious physical injury" but did suffer "physical injury," thus reducing the offense from assault in the first degree, as charged, to the lesser included offense of assault in the second degree. The court's reference to other conduct in the statutes constituting an assault manifestly did not affect the ultimate verdict. See *State v. Rogers,* 143 Conn. 167, 177, 120 A.2d 409, cert. denied, 351 U.S. 952, 76 S. Ct. 850, 100 L. Ed. 1476. "For an erroneous portion of a charge to be reversible error, the court must consider the whole charge and it must be determined, in appeals not involving a constitutional question, if it is reasonably probable that the jury were misled; *State v. Ralls,* 167 Conn. 408, 422, 356 A.2d 147; *State v. Tropiano,* 158 Conn. 412, 427, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288; *Penna v. Esposito,* 154 Conn. 212, 215, 224 A.2d 536; *Allard v. Hartford,* 151 Conn. 284, 292, 197 A.2d 69; and, in appeals involving a constitutional question, if it is reasonably possible that the jury were misled. *State v. Annunziato,* 169 Conn. 517, 532 and n.7, 363 A.2d 1011; see also *Gilbert v. California,* 388 U.S. 263, 268, 87 S. Ct. 1951, 18 L. Ed. 2d 1178; *Chapman v. California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed.

---

[4] The exact language of the verdict by the jury is not recorded in the transcript. The judgment states that the "jury returned a verdict of 'Guilty' of the crime of Assault in 2nd Degree—Section 53a-60 (a) (2)." In the absence of any contention to the contrary, we must presume that the jury returned this precise verdict.

2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241." *State* v. *Rose,* 169 Conn. 683, 687, 363 A.2d 1077. Using either test, the error in the charge was harmless.

## II

During the trial, Eric Lugo was asked on cross-examination, "Mr. Lugo, you did not get along with Mr. Ruiz, am I right, because of trouble with your wife?" Lugo replied, "But I never talked to him at no time. Only once he called me over to the corner and he had a gun sticking from his belt." The defendant objected to the answer as not being responsive to the question, and the court ordered the answer stricken. The defendant then moved for a mistrial, which the court denied. Thereupon, the defendant took an exception, and the court instructed the jury to disregard and remove the stricken testimony from their minds.

A mistrial should not be granted unless it is apparent to the court that because of some occurrence upon the trial a party cannot have a fair trial. *State* v. *Brown,* 169 Conn. 692, 703, 364 A.2d 186; *State* v. *Rose,* 168 Conn. 623, 635, 362 A.2d 813. "The trial court has wide discretion in passing on motions for mistrial." *State* v. *Savage,* 161 Conn. 445, 449, 290 A.2d 221; see *State* v. *Grayton,* 163 Conn. 104, 112, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495. In the light of the proper curative instructions to the jury we find no abuse of discretion on the part of the trial court in denying the motion for a mistrial.

## III

The defendant has assigned as error the trial court's denial of his motion to dismiss the information made at the close of the state's case. The claim

asserted is that the state had failed to establish a prima facie case. The denial of this motion to dismiss is not properly assignable as error. *State* v. *Williams,* 169 Conn. 322, 336, 363 A.2d 72; *State* v. *L'Heureux,* 166 Conn. 312, 324, 348 A.2d 578; Maltbie, Conn. App. Proc. § 212.

The defendant has also assigned error in the denial of his motion to set aside the verdict and in the court's failure to direct a verdict of acquittal, although he has briefed only the latter. The defendant claims that the state failed to prove beyond a reasonable doubt that Julio Echevarria had sustained a serious physical injury, that the defendant had intended to cause serious physical injury, or that a deadly weapon or dangerous instrument had been used by the defendant. The defendant further claims that there was insufficient evidence to sustain a verdict of assault in the second degree or assault in the third degree.

According to our appellate rules in effect on the date when the assignment of errors was filed, the denial of a motion for a directed verdict is tested by the evidence printed in the appendices to the parties' briefs, giving that evidence the construction most favorable to sustaining the jury's verdict. *State* v. *Brown,* supra. From that evidence, the jury could have found the following facts: When Julio Echevarria was about three feet from the door of the defendant's automobile the defendant raised his arm, and gunfire and the sound of a gun firing came from the defendant's automobile. Immediately after the gunfire Echevarria put his hand to his throat, and the defendant left the scene. Echevarria sustained a penetrating injury to his neck which appeared to be a gunshot wound. Exploratory surgery disclosed a tract or pathway going through

the neck area in close proximity to the carotid artery, the jugular nerve and the vagus nerve. At the time of the gunshot, it was dark and witnesses did not see the gun.

Since the defendant was convicted of intentionally causing "physical injury" to Julio Echevarria rather than intentionally causing "serious physical injury," as charged in the information, the defendant's claim that the state failed to prove beyond a reasonable doubt that Echevarria suffered "serious physical injury" may be disregarded. *State* v. *Wheaton,* 130 Conn. 544, 546, 36 A.2d 118. The evidence amply supports the jury's conclusion that Echevarria suffered "physical injury," which is defined by statute as "impairment of physical condition or pain." General Statutes § 53a-3 (3).

Although there is no direct evidence of specific intent to cause physical injury or that a deadly weapon or dangerous instrument was used by the defendant, there is circumstantial evidence to prove both of these elements. So far as probative force is concerned, there is no legal distinction between direct and circumstantial evidence. *State* v. *Cari,* 163 Conn. 174, 179, 303 A.2d 7; *State* v. *Taylor,* 153 Conn. 72, 78, 214 A.2d 362, cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442. "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Michalic* v. *Cleveland Tankers, Inc.,* 364 U.S. 325, 330, 81 S. Ct. 6, 5 L. Ed. 2d 20. "[I]t is within the province of a jury to draw reasonable and logical inferences from proven facts." *State* v. *Williams,* supra, 336. When a verdict is challenged on appeal, the issue is whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the

cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Benton,* 161 Conn. 404, 407, 288 A.2d 411.

"Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one. *Walter* v. *Home National Bank & Trust Co. of Meriden,* 148 Conn. 635, 638, 173 A.2d 503; *State* v. *Nathan,* 138 Conn. 485, 488, 86 A.2d 322. A person's intention may be inferred from his conduct; *State* v. *Pallanck,* 146 Conn. 527, 531, 152 A.2d 633; *Kiernan* v. *Borst,* 144 Conn. 1, 6, 126 A.2d 569; and every person is conclusively presumed to intend the natural and necessary consequences of his acts. *Peerless Mfg. Co.* v. *Goehring,* 131 Conn. 93, 95, 38 A.2d 5." *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447; see also General Statutes § 53a-3 (11); *State* v. *Farrah,* 161 Conn. 43, 49, 282 A.2d 879. The jury were amply justified in finding from the evidence that the defendant had the specific intent to cause physical injury to Echevarria. The cumulative effect of the evidence, including the evidence that gunfire was seen and a gunshot heard coming from the extended arm of the defendant with the resulting injury to Echevarria was ample to justify a finding that the assault was by the use of a deadly weapon or dangerous instrument. See General Statutes §§ 53a-3 (6) and 53a-3 (7) defining "deadly weapon" and "dangerous instrument."

## IV

On December 21, 1973, the defendant was sentenced "to be confined for a period of not exceeding five (5) years, as a maximum term, and not less than five (5) years, as a minimum term." On appeal, the defendant challenges this sentence for the first

time, claiming that it is contrary to § 53a-35 (a) of the General Statutes, which provides that "[a] sentence of imprisonment for a felony shall be an indeterminate sentence . . . ." In so arguing, the defendant has apparently overlooked § 53a-35 (c) which, at the time the defendant was sentenced, provided, in pertinent part, that "when a person is found guilty under . . . section 53a-60 (a) (2), . . . the minimum term shall be not less than five years and such sentence shall not be suspended or reduced." Because a violation of § 53a-60 (a) (2) is also a class D felony, the maximum term for which is five years; § 53a-35 (b) (4); the sentence imposed by the trial court was the only one possible under the then current provisions of the penal code. The mandatory five-year minimum sentence for a violation of § 53a-60 (a) (2) has since been repealed by 1974 Public Acts, No. 74-186, § 9, effective May 13, 1974, but the repeal of an act does not affect any punishment incurred before the repeal takes effect. General Statutes § 1-1 (t). The court did not err in its imposition of sentence.

There is no error.

In this opinion the other judges concurred.