STATE OF CONNECTICUT *v.* DONALD McGINNIS

STATE OF CONNECTICUT *v.* GEORGE SANDOR

STATE OF CONNECTICUT *v.* EDWARD STODOLSKI

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued March 5—decided April 3, 1969

*Charles Hanken,* for the appellants (defendants) in each case.

*Arlen D. Nickowitz,* assistant state's attorney, with whom, on the brief, was *Otto J. Saur,* state's attorney, for the appellee (state) in each case.

THIM, J. After a joint trial, the three defendants were convicted by a jury of breaking and entering a commercial vehicle in violation of § 53-74 of the General Statutes. The pertinent portion of § 53-74 makes it a criminal offense to break and enter a commercial motor vehicle with the intent to commit a crime therein. Following his conviction, one of the defendants, Donald McGinnis, was found guilty under the second part of the information which had been filed against him, charging him with being a

second offender. General Statutes § 54-118. The three defendants have appealed from the judgments, claiming that the verdicts are against the evidence and that the court made an erroneous ruling on evidence. In accordance with the defendants' request, the court ordered the cases consolidated for this appeal.

The Victor Vending Company owned a panel truck which had two loading doors on the passenger side and two at the rear. Cigarettes and candy were piled along the walls of the truck, and a safe was attached to the floor.

Martin R. Melody was employed by the Victor Vending Company to service and repair vending machines. On March 30, 1967, at approximately 2 p.m., he parked his employer's truck in front of the Bowl-O-Rama bowling alley in the Brookside Shopping Center in Bridgeport. Melody removed merchandise from the side doors of the truck, and, after locking the doors, he took the merchandise inside the bowling alley to fill vending machines. Melody remained inside the building for about twenty minutes and returned to the truck at approximately 2:30 p.m. to get additional merchandise. After removing some merchandise, Melody locked the panel doors and returned to the bowling alley, remaining for about forty minutes. Upon returning to the truck, he discovered that the side doors had been opened, that the safe had been broken into, and that from five to ten money bags containing $500 as well as two half-cases of cigarettes were missing. One of the containers of cigarettes was a cardboard box with the word "Marlboro" written on its side.

Melody notified the police department, and Floyd Pellegrino, a police officer, arrived at the scene at about 4 p.m. Officer Pellegrino observed that the

side doors of the truck were open, that there were marks on one of the doors, that the safe was open and its door was bent, and that nearby there was a screwdriver bent into the shape of a U.

At about 2:50 p.m. on the day in question, Leonard M. Cocco, a sergeant in the Bridgeport police department, while on vacation, was driving his automobile in an easterly direction on Anton Street. He observed the three defendants sitting in a white car parked in front of the Brookside apartments, which were then under construction. Cocco continued driving for about 200 feet when he stopped and parked his car. From the place where he was parked, Cocco observed two of the defendants, George Sandor and Donald McGinnis, leave the white car and enter the apartment site.

Meanwhile, the third defendant, Edward Stodolski, remained in the car and drove into the parking area of the Shop-Rite Center, which is adjacent to the Brookside apartments. Cocco drove into the same lot and parked his car facing the white car. Within approximately ten minutes, Cocco observed Stodolski drive into the street and park his car. Cocco followed the defendants' car, and, shortly thereafter, he observed McGinnis and Sandor emerge from the Brookside premises. McGinnis was carrying a box with red letters on its side, and Sandor was carrying cloth bags; they both rejoined Stodolski in the parked car.

The defendants left the area, and Cocco followed their car for about one mile until it stopped and parked at the Fairchild-Wheeler golf course. Cocco then parked his car and approached the defendants' vehicle. When he was within a few feet of the car, he observed Stodolski in the driver's seat, Sandor alongside of Stodolski and McGinnis in the rear

seat. Moreover, in the rear seat Cocco observed bags resembling "bank bags" and a cardboard box with the word "Marlboro" in red lettering. Thereupon, Stodolski put his car in reverse and fled the area at an excessive rate of speed.

Cocco followed and overtook the defendants' car, and, at Fairfield Woods Road, he parked diagonally to cut off their car. As Cocco got out of his own car and approached the defendants' vehicle, Sandor covered his eyes with his hands, and Cocco said: "I know you, Sandor." At this point, the defendants' vehicle backed up at a fast rate of speed and disappeared from Cocco's sight. Returning to his car, Cocco called police headquarters, giving a description of the defendants and their car and requesting that they be arrested on his authority. Shortly thereafter, Cocco learned of the theft at the bowling alley owing to a police radio call. Thereupon, Cocco proceeded to the bowling alley where he met Melody and Officer Pellegrino.

The Bowl-O-Rama, where the theft occurred, is a short distance from the Brookside apartments, where Cocco first observed the defendants with the cardboard box and the money bags. The entrance to the bowling alley, from Main Street, is about 500 feet north of Anton Street, which borders the southerly side of the Brookside apartments and the adjacent Shop-Rite Center parking area. A wooded area containing a rock ledge which rises about fifty feet lies between the bowling alley and the Brookside apartment site.

The defendants' principal claim is that the verdicts are not supported by the evidence and that the court committed error by denying their motions to set them aside. We do not agree with this contention. The question presented by the defendants'

claim is whether the trial court abused its legal discretion in denying the motions to set aside the verdicts. *Brooks* v. *Singer,* 147 Conn. 719, 158 A.2d 745; *Desmarais* v. *Pinto,* 147 Conn. 109, 110, 157 A.2d 596. In determining whether the trial court abused its legal discretion, we decide only whether the evidence was sufficient to justify a finding by the jury that the defendants were guilty beyond a reasonable doubt. As we have often said, proof of guilt beyond a reasonable doubt excludes every reasonable supposition of innocence. *State* v. *Smith,* 156 Conn. 378, 382, 242 A.2d 763; *State* v. *Annunziato,* 145 Conn. 124, 136, 139 A.2d 612; *State* v. *Smith,* 138 Conn. 196, 200, 201, 82 A.2d 816; *State* v. *McDonough,* 129 Conn. 483, 485, 29 A.2d 582; *State* v. *Santoro,* 128 Conn. 297, 299, 22 A.2d 793; *State* v. *Guilfoyle,* 109 Conn. 124, 139, 145 A. 761.

A conviction of breaking and entering would not be precluded because nobody actually saw one of the defendants breaking into the truck, entering it, or even inside it. *State* v. *Kohlfuss,* 152 Conn. 625, 639, 211 A.2d 143. The jury found the defendants guilty of breaking and entering a commercial vehicle on the basis of circumstantial evidence. This does not necessarily mean that the state did not have a strong case against the defendants because there is no legal distinction between direct or circumstantial evidence so far as its probative force is concerned. *State* v. *Smith,* supra, 200; *State* v. *Colonese,* 108 Conn. 454, 460, 143 A. 561; *State* v. *Rome,* 64 Conn. 329, 334, 30 A. 57. Although the evidence was wholly circumstantial, a verdict of guilty must stand if the jury could reasonably have concluded that the cumulative effect of the evidence established the guilt of a defendant beyond a reasonable doubt. *State* v. *Kreske,* 130 Conn. 558, 563, 36 A.2d 389; *State* v.

*Hayes,* 127 Conn. 543, 554, 18 A.2d 895; *State* v. *Olavieri,* 123 Conn. 678, 679, 195 A. 181.

It is within the province of the jury to draw reasonable, logical inferences from the facts proven. *State* v. *Pundy,* 147 Conn. 7, 12, 156 A.2d 193; *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591; *State* v. *Murphy,* 124 Conn. 554, 562, 1 A.2d 274. Furthermore, the jury can draw an inference from facts which they found as a result of other inferences. *State* v. *Hayes,* supra, 555. In reviewing the inferences which the jury drew, we limit our inquiry to whether they were so unreasonable as to be unjustifiable. *State* v. *Hayes,* supra.

The cumulation of evidence and permissible inferences supports, beyond a reasonable doubt, the jury's conclusion that the defendants confederated together to break and enter the truck in order to commit a theft therein and that sometime between 2:30 p.m. and 3:15 p.m. at least one of the defendants broke into and entered the truck in order to steal cigarettes and cloth bags containing $500. Having found a concert of action, the jury could reasonably conclude that all the defendants were guilty of the commission of the crime. General Statutes § 54-196. The evidence in conjunction with such reasonable inferences as might have been drawn by the jury was sufficient to support the verdicts, and the court did not err in denying the motions to set them aside.

The defendants' second claim of error is that the court erroneously permitted Cocco to characterize the defendant Stodolski's facial expression as one of fright and nervousness. There is no merit to this claim.

The existence or absence of the emotions of fright or nervousness in a person at a certain time may be

proven by the opinion of a nonexpert as deduced from his observation of that person's appearance and conduct. 31 Am. Jur. 2d, Expert and Opinion Evidence, § 161. The trial court did not commit error by permitting Cocco to describe Stodolski's facial expression. The court's ruling involved an application of the rule that a lay witness may give his impression or opinion of conditions or circumstances which are so numerous or complicated that he could not otherwise adequately describe them or otherwise convey to the jury the impression which they gave to him. *MacLaren* v. *Bishop,* 113 Conn. 312, 314, 155 A. 210; *Atwood* v. *Atwood,* 84 Conn. 169, 174, 79 A. 59. The foundation upon which such an opinion rests can be tested by cross-examination.

There is no error in any of the cases.

In this opinion the other judges concurred.