STATE OF CONNECTICUT v. RICHARD P. BENTON

STATE OF CONNECTICUT v. PETER H. BRELSFORD

HOUSE, C. J., THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued June 3—decided June 25, 1971

*Henry C. Campbell,* public defender, for the appellant (defendant) in each case.

*Thomas F. Wall,* state's attorney, for the appellee (state) in each case.

SHAPIRO, J.  Each defendant was charged in separate informations with a count of breaking and entering in violation of General Statutes § 53-76[1] and a count of larceny involving goods of the value exceeding $250 but not exceeding $2000, in violation

---

[1] "Sec. 53-76. BREAKING AND ENTERING WITH CRIMINAL INTENT. Any person who, with intent to commit any crime therein, breaks and enters any building or vessel, or any motor vehicle, in the possession of another used as a place for the custody of property, or any building used as a place of instruction or of public worship, shall be imprisoned not more than four years."

of General Statutes § 53-63.[2] After a joint trial to a jury, each defendant was found guilty of violating § 53-76 and not guilty of violating § 53-63. Each defendant filed a motion to set aside the verdict of guilty as to the first count charged against him and each one also filed a motion for a new trial. Their motions were denied and from the judgments rendered on the two verdicts, both defendants have appealed to this court. By stipulation of both defendants and as ordered by the court, the two cases were combined for the appeal.

The defendants have assigned error in the court's denial of their motions to set the verdicts aside because each is not supported by the evidence and each is inconsistent with the verdict on the second count. A further assignment of error is directed to the court's denial of their motions for a new trial because the state's attorney argued improperly to the jury.

The denial of the defendants' motions to set aside the verdict because it is not supported by the evidence is tested in the light of the evidence printed in the appendices to the briefs. *State* v. *Cobb,* 159 Conn. 31, 32, 266 A.2d 393; *State* v. *Mortoro,* 157 Conn. 392, 393, 254 A.2d 574; *State* v. *Gyuro,* 156 Conn. 391, 397, 242 A.2d 734, cert. denied, 393 U.S. 937, 89 S. Ct. 301, 21 L. Ed. 2d 274. As to the motion to set aside the verdict, the evidence must be given a construction most favorable to sustaining the jury's verdict; *State* v. *Raffone,* 161 Conn. 117, 121, 285 A.2d 323; but the verdict must be set aside if

---

[2] The pertinent portion reads as follows: "Sec. 53-63. LARCENY. SHOPLIFTING. (a) Any person who steals any money, goods or chattels, . . . if the value of the property stolen . . . exceeds two hundred fifty dollars but does not exceed two thousand dollars, he shall be imprisoned not more than five years or fined not more than five hundred dollars or both."

the evidence was insufficient to justify the jury in finding guilt beyond a reasonable doubt. *State* v. *Kelsey,* 160 Conn. 551, 553, 274 A.2d 151; *State* v. *McGinnis,* 158 Conn. 124, 129, 256 A.2d 241.

The appendices to the briefs disclose the following: Miss Katherine Hurd owns property in New Milford consisting of forty-eight acres and having on it a farmhouse, a summer house called the castle and another house near it. The area is wooded, completely undeveloped and isolated. She resides in the farmhouse which is located on the northerly side of Town Farm Road, a hard-surfaced road. From the farmhouse, Town Farm Road runs westerly to a dirt road known as Lover's Leap Road which continues along Lake Lillinonah and passes the driveway leading to the castle. The entrance to the driveway is marked by two stone posts and several signs such as "Private" and "Keep Out," unmistakably marking it as a private driveway. By means of the driveway it takes five minutes to walk from the stone posts to the castle.

The castle, a nine-room summer home, furnished principally with antiques, was unoccupied but it contained a burglar alarm. On March 26, 1968, its inner doors were closed, the alarm was reset to two inner doors and a cardboard was placed across a broken glass in the back door. On April 3, 1968, Miss Hurd observed that changes had occurred in the castle since she had inspected and secured it on March 26 in that the cardboard on the back door had been pushed in, the house had been ransacked, antique toilet jars, bowls, pitchers and other articles were missing. On these articles, Miss Hurd had originally placed a value of $300 but now considered $200 as their reasonable value.

A state trooper on patrol, on the night of April 2,

was advised that the alarm at the castle was ringing. He and several other officers went to the area. On checking the castle, the inner doors were found open. Two of the officers found a parked Cadillac automobile at the easterly end of the dirt road where it joins Town Farm Road, being a point between the farmhouse and the driveway to the castle. The automobile belonged to the defendant Richard P. Benton. While they were driving from the castle and at a point on the north side of the two stone posts, two of the officers observed white covers on the ground under which they found bowls, pitchers, vases and other articles. These were later brought to the police station where they were dusted for fingerprints and a latent fingerprint was found on one of the articles. The fingerprint was identified as Benton's. These articles were admitted into evidence at the trial and identified as belonging to Miss Hurd and coming from the castle.

Two other officers, investigating in the area, after ten or fifteen minutes, heard someone coming down the road from the direction of the castle. It turned out to be the defendants. They said their car had heated up and would not start, that they were looking for assistance but gave no reasonable answer as to why they had not gone to a lighted farmhouse 400 feet from their parked car. The automobile started with no difficulty and showed no indication of being overheated. One of the officers checked the engine in the presence of the defendants and found it was not overheated.

The two teams of police had earlier executed a pincer's movement. Both teams had moved southerly from the town of New Milford. One team approached the westerly end of Lover's Leap Road from the west by way of River Road. The other

team approached the easterly end of Lover's Leap Road by way of Town Farm Road. Within a short time Lover's Leap Road had been traversed and only the defendants and their automobile were found in this isolated area.

Benton claimed he was lost, but was not telling the truth when he said that to the officers. With neither a flashlight nor any other artificial light the defendants were able to locate the bundles of articles later identified as having been in the castle. Benton claimed that prior to parking his automobile at the point between the farmhouse and the driveway to the castle, he and Peter H. Brelsford had parked in the driveway where the two stone posts were located and they sat there drinking; that he, Benton, got out of the car to void, walked ten or fifteen feet past one of the stone posts when he saw "a pile of stuff wrapped in a rag" and kicked it; that when kicked, it made "a glass noise" so he "reached down and started pawing through it." Benton argues in his brief that this accounts for the presence of his finger-print on one of the articles. One of the officers had been in close contact with both defendants and had talked with them at some length and neither one gave any indication that he had been drinking.

The question presented by the defendants' claim is whether the trial court abused its legal discretion in denying the motions to set aside the verdicts. *State* v. *McGinnis,* 158 Conn. 124, 129, 256 A.2d 241. We decide only whether the evidence was sufficient to justify a finding by the jury that the defendants were guilty beyond a reasonable doubt. As we have often said, proof of guilt beyond a reasonable doubt excludes every reasonable supposition of innocence. *State* v. *Smith,* 156 Conn. 378, 382, 242 A.2d 763; *State* v. *Annunziato,* 145 Conn. 124, 136, 139 A.2d

612; *State* v. *Smith,* 138 Conn. 196, 200, 201, 82 A.2d 816; *State* v. *McDonough,* 129 Conn. 483, 485, 29 A.2d 582.

A conviction of breaking and entering would not be precluded because no one actually saw either or both of the defendants break into the castle. *State* v. *Kohlfuss,* 152 Conn. 625, 639, 211 A.2d 143. The jury found the defendants guilty of breaking and entering on the basis of direct as well as circumstantial evidence. This does not necessarily mean that the state's case was weak since there is no legal distinction between direct or circumstantial evidence so far as its probative force is concerned. *State* v. *Smith,* supra, 200; *State* v. *Colonese,* 108 Conn. 454, 460, 143 A. 561. A verdict of guilty must stand if the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Kreske,* 130 Conn. 558, 563, 36 A.2d 389; *State* v. *Hayes,* 127 Conn. 543, 554, 18 A.2d 895.

It is within the province of the jury to draw reasonable and logical inferences from the facts proven. *State* v. *Pundy,* 147 Conn. 7, 12, 156 A.2d 193; *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591. Furthermore, the jury can draw an inference from the facts they found as the result of other inferences. *State* v. *Hayes,* supra, 555. Our inquiry is directed to whether, on the facts established and the inferences reasonably to be drawn therefrom, the verdict can be supported. With the cumulative effect of the evidence and permissible inferences for their consideration, the jury were amply justified in finding that the state had proved the guilt of the defendants beyond a reasonable doubt.

The defendants claim that the verdicts of guilty on the counts of breaking and entering are incon-

sistent in fact with the verdicts of not guilty on the counts of larceny and should, therefore, be set aside. The second count of each information charged that each defendant "did steal goods and chattels of the value exceeding $250.00 but not exceeding $2,000.00, in violation of Section 53-63." The appendix to the state's brief discloses that Miss Hurd had placed a reasonable value on the missing articles of $300 when interviewed by an officer but at the trial she testified that she now considers their reasonable value to be $200. We have no evidence before us regarding the court's charge to the jury as related to § 53-63 and the defendants make no claim that the charge was incorrect in any respect. A conviction for burglary or breaking and entering may be upheld notwithstanding any asserted inconsistency between it and an acquittal on another count charging larceny or a similar theft crime. Note, 18 A.L.R.3d 332 § 22 (a); see also *Dunn* v. *United States,* 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356; *Audett* v. *Johnston,* 142 F.2d 739 (9th Cir.), cert. denied, 323 U.S. 743, 65 S. Ct. 50, 89 L. Ed. 595; *Audett* v. *United States,* 132 F.2d 528 (8th Cir.). The offense of breaking and entering is complete without an actual larceny. The latter, if committed, is a distinct offense. *Wilson* v. *State,* 24 Conn. 57, 65.

On the record and as a matter of law, there is no inconsistency in either verdict. In testing the verdict for inconsistency as a matter of law, we are necessarily limited to an examination of the offense charged in the informations and the verdicts rendered thereon without regard to what evidence the jury had for consideration. *State* v. *Keating,* 151 Conn. 592, 596, 200 A.2d 724. There is nothing in either information to indicate that the acquittal of the defendants under the second count of the infor-

mations charging violation of § 53-63 is inconsistent with the finding of guilt under the first count charging violation of § 53-76. Accordingly, we find no error in the denial of the motions of the defendants to set the verdicts aside on the ground that they were inconsistent.

The defendants assign error in the court's denial of their motions for a new trial on the ground that the state's attorney argued improperly to the jury. In his argument to the jury, the state's attorney stated: "As a matter of fact, these police, I believe, were about as polite to a couple of crooks as you could expect anyone to be." The defendants' counsel objected by saying: "I'll object to that, if your Honor please, referring to them as 'crooks.' I think that's unfair." The court responded: "That particular phraseology will be disregarded by the jury." Other than the foregoing, we have nothing else before us to indicate what further action during the trial, if any, was taken by the court or by the defendants.

The statement of the state's attorney should not have been made, but that does not necessarily entitle the defendants to a new trial. In such cases the trial court is invested with a large discretion, and unless the defendants' rights have been injuriously prejudiced before the jury, we will not interfere with the exercise of that discretion. *State* v. *Washelesky*, 81 Conn. 22, 29, 70 A. 62; *State* v. *Buxton*, 79 Conn. 477, 480, 65 A. 957; *State* v. *Laudano*, 74 Conn. 638, 646, 48 A. 965.

Whether the remarks of the state's attorney did prejudice the defendants was a question for the trial court, within its discretionary powers, to pass on, and it decided that in the negative. Moreover, there is nothing on the record to show that the court

was wrong in this conclusion, or that the remark in question had any effect whatever in bringing about the verdicts. In view of the court's prompt caution to the jury to disregard the phraseology used by the state's attorney and on the whole record, we cannot say that the defendants' rights were injuriously affected so as to require a new trial.

There is no error.

In this opinion the other judges concurred.