The defendant was charged with crimes of burglary in the third degree and larceny in the third degree. On a trial to the jury he was found guilty of the burglary charge and not guilty of the larceny charge. The principal issues raised in the defendant's appeal involve the scope of the state's cross-examination of him, claimed improper comment by the court and the prosecuting attorney, and claimed error in the denial of the defendant's several motions addressed to the verdict. *Page 748 
The facts may be briefly summarized. On March 20, 1975, Eugene Jakovenko left his first-floor apartment on Sherman Avenue in New Haven. When he returned some forty minutes later he found a ticket on the door telling him not to disturb anything. When he entered the apartment he found the living room in a mess. He claimed that $55 in cash which he had hidden under the living room rug was missing. During the interval that Jakovenko was out of the apartment, George Martin, the building superintendent, and his friend Samuel Harris saw a man coming out of Jakovenko's apartment. Martin asked the man, "who are you looking for?" and "what are you doing here?" because he knew the man to be a stranger. The man replied that he was there to see a client and walked out. Both Martin and Harris later identified the defendant as the man they had seen coming out of Jakovenko's apartment. Jakovenko did not know the defendant and had never given him permission to enter his apartment.
The defendant claims that the court's ruling permitting the state to cross-examine him with respect to his activities during the three days prior to the date of the crime was not only erroneous in that it permitted cross-examination beyond the scope of the direct testimony but that it was also harmful in that it permitted collateral matters such as the defendant's habits and life style to be improperly brought before the jury. The defendant's points are not well taken. While it is true that cross-examination is limited to the subject matter of the direct examination; State v. Manning, 162 Conn. 112, 116; the cross-examiner may elicit not only any fact which would tend to contradict or qualify any particular fact stated on direct examination but also anything which would tend to modify any conclusion or inference resulting from the facts so *Page 749 
stated. Shulman v. Shulman, 150 Conn. 651, 661; Levine v. Marcus, 90 Conn. 682, 684. Much of the questioning concerning the three days before March 20 tended to test the statements made by the defendant on direct to the effect that he remained indoors during that entire period. The state was not obliged to accept that testimony at face value.
The defendant complains that he was denied 
fair trial because the trial judge remarked to the jury that one state's exhibit "is a page of a letter apparently written by Miss Ellis," the defendant's girl friend and one of his alibi witnesses, and because the prosecuting attorney in final argument called the jury's attention to claimed erasures in that exhibit. The defendant did not object to the court's remark. His objection to the prosecuting attorney's comment was sustained. The court observed that the prosecutor could call the exhibit to the jury's attention for its examination but that he should not make any suggestions. The defendant agreed with the court's observations and made no request for any special instruction with respect to the prosecutor's argument. The defendant raises his claim of a denial of a fair trial for the first time on appeal. In the absence of a showing of substantial injustice, we are not required to consider that claim. State v. Evans, 165 Conn. 61,65-66; State v. Fredericks, 154 Conn. 68, 72. No showing of substantial injustice can be made out of the trial court's innocuous remark nor out of the prosecutor's comment, even if it is assumed to be improper, because the court took corrective action to the defendant's apparent satisfaction. Defendants have no right to gamble on the outcome of a trial and then claim foul when the gamble does not pay off. State v. Lombardo, 163 Conn. 241,246; State v. Taylor, 153 Conn. 72, 86. Were the comment so egregious that no amount of instructional solvent could remove the *Page 750 
prejudicial stain we might view the situation differently, but inviting the jury to examine a document in evidence for the purpose of determining whether it has been altered or erased is not that type of comment. See State v. Wallace,78 Conn. 677, 678.
Upon the conclusion of the presentation of evidence the defendant filed a motion for a directed verdict. After the jury returned its guilty verdict on the burglary charge the defendant filed a motion to set aside the verdict and a motion for judgment notwithstanding the verdict. The action of the trial court in denying those motions is tested by the evidence in the case; State v. Ruiz, 171 Conn. 264,275; State v. Palozie, 165 Conn. 288, 290; Fleming v. Becker, 162 Conn. 563, 565; giving that evidence the construction most favorable to sustaining the verdict. State v. Brown, 169 Conn. 692, 695.
The defendant first claims that his conviction of the burglary charge was inconsistent in fact with his acquittal of the larceny charge. That claim is without merit. The defendant recognizes, as he must, that no such inconsistency exists as a matter of law. State v. Benton, 161 Conn. 404,411. Under 53a-103 of the General Statutes, "[a] person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein." The offense of burglary is complete without an actual larceny. State v. Benton, supra. Although the swag is a burglar's stock-in-trade, in the eyes of the law an empty bag does not result in a loss of his occupational status even though it may diminish his professional standing among his peers. Furthermore, there is no inconsistency in fact in this case. It is clear from the evidence that the crime which the burglar intended to commit was larceny. The fact that the jury may not have been satisfied from *Page 751 
the evidence that $55 was stolen from under Jakovenko's living room rug, or, if it was, that the defendant had stolen it does not mean that they were not entitled to infer from the disarray in the apartment the burglar's larcenous intent.
The defendant's essential claim is that the testimony of the state's witnesses identifying the defendant as the intruder contains so many inconsistencies and contradictions that it could not furnish a basis for a finding beyond a reasonable doubt by the jury that the defendant committed the burglary in question. If the defendant's contention were accepted it would work a fundamental change in the role of the trier with respect to the determination of questions of fact. It is the exclusive function of the trier, in this case the jury, to judge the credibility of witnesses and the weight to be given their testimony. In performing this task the jury are privileged to adopt whatever testimony they reasonably believe to be credible. State v. Chisolm,162 Conn. 631, 632. This includes the right to believe the state's witnesses and to disbelieve the defendant's alibi witnesses. State v. Bill,146 Conn. 693, 696. It also includes the privilege to accept a part of a witness' testimony and to disbelieve it in other respects. State v. Coulombe, 143 Conn. 604, 608. The fact that the state's witnesses gave conflicting testimony in certain respects does not mean that their entire testimony must be rejected.
Both Martin and Harris were positive in their identifications of the defendant as the man they saw coming out of Jakovenko's apartment. Harris had picked the defendant's photograph from a batch of approximately 200 photographs laid before him by the police. There is no evidence that the police suggested to Harris that the defendant was a suspect. There is no evidence that either Martin or Harris had any ulterior motive for designating the *Page 752 
defendant as the culprit. Although both Martin and Harris might have been mistaken in their identifications, and although the jury was privileged to discredit their testimony because of the discrepancies in their descriptions of the intruder, they were not bound to do so. Both Martin and Harris had an ample opportunity to observe the burglar so as to be able to identify him. It was daytime, the sun was shining and there was sufficient natural light in the hallway leading from Jakovenko's apartment to enable Martin and Harris to observe and recognize the intruder. There was ample evidence, if believed, that the defendant committed the offense of which he was found guilty.
 There is no error.
In this opinion SPEZIALE and SPONZO, Js., concurred.