STATE OF CONNECTICUT *v.* JOSEPH WILSON

COTTER, C. J., BOGDANSKI, LONGO, PETERS and SIDOR, Js.

Argued May 10—decision released July 17, 1979

*Martin B. Burke,* special public defender, with whom, on the brief, was *Leo B. Flaherty, Jr.,* special public defender, for the appellant (defendant).

*Donald B. Caldwell,* state's attorney, for the appellee (state).

BOGDANSKI, J. The defendant was tried before a jury on a three-count information charging him with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4); larceny in the first degree in violation of § 53a-122 (a) (1), and larceny in the second degree in violation of § 53a-123 (a) (1). The jury found the defendant guilty of robbery as charged in the first count, but not guilty of larceny as charged in the second and third counts. The defendant then filed a motion to set aside the verdict on the first count as contrary to the law and the evidence. The court denied the motion and the defendant has appealed to this court.

From the evidence presented, the jury could have found the following facts: At about 11 p.m., on November 11, 1976, Frank Vanderbrouk, his wife and granddaughter returned to their home in Somers after visiting friends. Once inside, they were confronted by two masked men armed with pistols. One man was tall—about six feet or six feet one inch, while the other one was short. Both men wore gloves and both were black. The victims were tied up and placed in the cellar and the cellar telephone was ripped out. Taken from the home were money, television sets, liquor, rifles and cases, a shotgun and its case, and a gold chain necklace. The two men drove off in the Vanderbrouks' 1967 Ford automobile.

On the evening of November 24, 1976, Trooper James Johnston was investigating a series of robberies which had followed a similar pattern or method, i.e., the victims would be confronted in their homes by two men; the descriptions of the men were generally the same; the robbers would cut the tele-

phone wires, accomplish their goals and flee in the victims' car, later abandoning the car in an area near the railroad station in Hartford. At about 10 p.m., Trooper Johnston was alerted that an attempted robbery had taken place in the town of Windsor and that a man had been shot. The officer interviewed the victim at Mt. Sinai Hospital. The victim told him that the robbers were two men, one wearing a ski mask; that both appeared to be black, and that one was taller than the other. The victim's wife stated that the noise she and her husband had heard outside their home had come from the area of the telephone wires. The interviews took place between 10:30 and 11 p.m. Johnston and another trooper then went to the scene of the Windsor crime where they learned that the two assailants had fled on foot into a wooded area. The troopers then left the area and drove south on interstate route I-91 toward Hartford. As they approached the Farmington River bridge on route I-91, they saw two black males on foot, one taller than the other. The distance from the bridge to the scene of the Windsor robbery was about two miles. The troopers stopped their vehicle and approached the men, observing that they had on dark clothing, that there were burrs and twigs on the lower portion of their trousers and that the men were sweaty and breathing heavily even though it was a cold night in November. The men were placed under arrest in connection with the shooting that had occurred that night in Windsor. The taller of the two men was the defendant Wilson. The other was Ronald Menefee. A search of the men produced a brown colored ski mask, a pair of olive gloves, a flashlight and a pair of wire cutters. At the Windsor police station, Trooper Richard Raposa removed a gold chain necklace from the neck

of the defendant because the necklace matched the description of one taken in the Vanderbrouk robbery.

When asked for his home address, the defendant replied 111 Montville Street, Hartford. The record reveals that the defendant's son lived at the Montville Street address; that the defendant's address as listed with the department of motor vehicles was 111 Montville Street; and also that on two prior occasions when the defendant had been arrested he had told the police that his address was 111 Montville Street, Hartford. Upon application duly made the police obtained a search warrant for the Montville Street premises.

Two guns seized in that search were later identified as the guns taken in the Vanderbrouk robbery on November 11, 1976. Gun cases found at 111 Montville Street were also identified as the gun cases taken in the Vanderbrouk robbery. Ronald Menefee later led the police to a woodpile about one mile from the place of arrest where a .22-caliber Winchester rifle was found. This rifle was one of the rifles taken during the Vanderbrouk robbery.

The necklace taken during the Vanderbrouk robbery was 14-karat gold, eighteen inches long and had a distinctive clasp. The necklace removed from the neck of the defendant was 14-karat gold, eighteen inches long and had a clasp identical to the necklace taken from the Vanderbrouk home. Vanderbrouk testified that the necklace was identical to the one stolen from his home. He also testified that the ski mask, brown in color, with a triangular nosepiece bordered by orange, taken from the defendant, was like the mask which he had seen on the taller of the two men who robbed him.

On appeal, the defendant claims (1) that the attempts by the state to refresh the memory of the witness Menefee with questions about a prior statement violated the defendant's sixth amendment right to confrontation; (2) that the state had failed to prove beyond a reasonable doubt that it was the defendant who committed the crimes charged; (3) that the trooper who arrested the defendant did not have reasonable grounds to believe that the defendant had committed a felony and that therefore the arrest and search incidental thereto were both illegal; (4) that the court in sentencing the defendant had failed to state the effective sentence imposed; and, finally, (5) that the court had erred in admitting certain evidence during the trial.

At the trial the state called the defendant's companion, Ronald Menefee, as a witness. Menefee was asked if he recalled participating in a robbery in Somers in 1976. When he answered in the negative, the state, in an attempt to refresh the witness' recollection, questioned him as to a prior statement which he had made to the police. The witness professed to have no recollection of the contents of that statement or of the events related therein. On appeal the defendant claims that the court erred in permitting the state to question the witness as to the previous statement; that the questioning permitted the state to elicit evidence incriminating to the defendant and that the witness' lapse of memory effectively deprived the defendant of the opportunity to cross-examine the witness.

In many jurisdictions, when a witness, as here, does not claim his fifth amendment privilege against self-incrimination, but rather testifies, asserting merely that he has no recollection of the events in

question, the introduction into evidence of a prior statement or prior testimony has been held to be permissible. See *United States* v. *Insana,* 423 F.2d 1165 (2d Cir.), cert. denied, 400 U.S. 841, 91 S. Ct. 83, 27 L. Ed. 2d 76. Although the state, under the rule of the *Insana* case, could properly have put before the jury the entire statement of the witness Menefee, no such attempt was made. Neither did the state, as claimed by the defendant, read to the jury any portions of the witness' prior statement prejudicial to the defendant. The record reveals rather that the state carefully limited itself to questioning the witness as to the giving of the prior statement in an effort to refresh the witness' recollection and to prod him into testifying—efforts which were notably without success. The record discloses that no evidence incriminating to the defendant came before the jury either as the result of the testimony of the witness Menefee or as the result of the questions put by the state in an effort to refresh the witness' recollection. Under the circumstances, we cannot conclude that the trial court erred in permitting the state to question the witness Menefee.

In his brief the defendant concedes that the evidence introduced at trial was sufficient to establish all the elements of the crime of robbery in the first degree. He claims, however, that the state failed to prove beyond a reasonable doubt that it was the defendant who had committed the robbery charged in the information. The state maintains that even though there was no eyewitness identification of the defendant, there was sufficient circumstantial evidence from which the jury could logically have drawn the inference that the defendant was the perpetrator of the crime charged. We agree.

We note that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned; *State* v. *Brown*, 169 Conn. 692, 695, 364 A.2d 186; *State* v. *Cari*, 163 Conn. 174, 179, 303 A.2d 7; and that a verdict of guilty must stand if the jury could reasonably have concluded that the cumulative effect of the evidence was sufficient to establish guilt beyond a reasonable doubt. *State* v. *Benton*, 161 Conn. 404, 410, 288 A.2d 411; *State* v. *Kreske*, 130 Conn. 558, 563, 36 A.2d 389.

It is the function of the jury to weigh the credibility of witnesses, to determine the facts and from those facts to draw logical and reasonable inferences. *State* v. *Ortiz*, 169 Conn. 642, 646, 363 A.2d 1091. On appeal our inquiry is limited to determining whether on the facts established and the inferences reasonably to be drawn therefrom, the verdict returned by the jury can reasonably be sustained. *State* v. *Benton*, supra, 410.

From the facts as narrated in the briefs and as substantiated by the record and transcript, the jury could have reasonably found the following: The robbery of the Vanderbrouk home was committed by two black males wearing ski masks. The ski mask seized from the defendant in Windsor had a distinctive triangular nosepiece bordered with orange, like the one worn by the robber in Somers. The gold chain necklace taken from the neck of the defendant was identical to the necklace taken in that robbery. The defendant gave 111 Montville Street, Hartford, as his home address. The two guns and the three gun cases seized at the 111 Montville Street address, twelve days after the robbery, were identified as the guns and cases stolen in the Somers robbery. The rifle found hidden in a woodpile about one mile from

where the defendant and Menefee were arrested on November 24, 1976, was also identified as one of the rifles taken during the Somers robbery.

We conclude that the cumulative effect of the above evidence and the permissible inferences to be drawn therefrom were sufficient to justify the jury in finding that the defendant was one of the perpetrators of the Somers robbery.

The defendant's next claim is that the trooper who arrested him on the night of November 24, 1976, did not have reasonable grounds to believe that the defendant had committed a felony; that the arrest and the search incidental thereto were therefore both illegal; and that the evidence obtained as a result of that search was tainted and should have been suppressed by the court.

General Statutes § 6-49 permits an officer to arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed a felony. *State* v. *Penland,* 174 Conn. 153, 155, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404; *Martyn* v. *Donlin,* 151 Conn. 402, 409, 198 A.2d 700. This court on numerous occasions has stated that "reasonable grounds" as that term is used in the statute is to be equated with probable cause. *State* v. *Cobuzzi,* 161 Conn. 371, 373, 288 A.2d 439, cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664. "In order to establish probable cause it is not necessary to produce a quantum of proof sufficient to establish guilt. . . . Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to

warrant a man of reasonable caution to believe that a felony had been committed." *State* v. *Wilson,* 153 Conn. 39, 42, 212 A.2d 75.

The facts and circumstances surrounding the arrest of the defendant on the night of November 24, 1976, have already been set out in some detail in an earlier portion of this opinion and need not be repeated here. We conclude that those facts and circumstances provided reasonable grounds for the arrest and that the arrest and the search incidental thereto were therefore both legal.

The defendant's next claim is that the court failed to state the effective sentence imposed upon him as required by General Statutes § 53a-37. The record discloses that the defendant, at the time of sentencing, did not raise any question concerning the manner in which sentence was imposed; nor did he raise any such question in his preliminary statement of issues or in his assignments of error. To permit the defendant to claim error in the court's sentencing on the basis of objections never raised at trial would be to permit trial by ambuscade of the trial judge. *State* v. *Johnson,* 166 Conn. 439, 444, 352 A.2d 294. In this context we note that the well-settled rule that this court is not bound to consider claims of law not raised at trial applies to criminal as well as civil cases. *State* v. *Sul,* 146 Conn. 78, 81, 147 A.2d 686. Moreover, the defendant concedes in his brief that the sentence imposed was neither inappropriate nor disproportionate. Since the claim of error as to the sentencing is thus clearly not of constitutional dimensions, this claim need not and will not be considered by this court on appeal.

The defendant's final claim concerns the admission into evidence of the gold chain necklace; the brown

ski mask and gloves; the name of the person arrested with the defendant; the gun found in the woodpile; and the guns and gun cases seized in the search of the Montville premises.

The defendant's objection to the admission of the necklace is on the ground of relevance. Since no precise and universal test of relevancy is furnished by the law, the question of relevance must be determined in each case in accordance with reason and judicial experience. *State* v. *Rose,* 168 Conn. 623, 636, 362 A.2d 813. The fact that the police took from the defendant a gold necklace *identical* to the one stolen in the Somers robbery would certainly appear to be relevant. The fact that the necklace was not positively identified as the same one taken in the Somers robbery does not make the necklace incompetent as evidence but merely goes to the weight of such evidence. We conclude that the trial court cannot be said to have abused its discretion in permitting the necklace to be introduced into evidence.

At trial the defendant objected to the admission of the ski mask and gloves on the ground that these items were seized incident to an illegal arrest. The claim that the arrest of the defendant was illegal has already been discussed and disposed of.

We find the defendant's claim that the name of the person arrested with him was elicited by the state in an attempt to establish guilt by association to be without merit. The record reveals that there was no evidence linking Menefee to the Somers robbery other than the guns seized at the Montville Street address, which evidence equally implicated the defendant.

On appeal the defendant argues, for the first time, that the gun found in the woodpile should not have been allowed into evidence on the ground of remoteness. This claim of error was not raised at trial and will therefore not be considered on appeal. *State* v. *Addazio,* 169 Conn. 416, 363 A.2d 153.

The defendant's final evidentiary claim is that the guns and cases seized at the 111 Montville Street address were not relevant and should therefore not have been admitted into evidence. The record reveals that these items were admitted into evidence at the trial without objection by the defendant, after having been positively identified as the guns taken in the Somers robbery. We conclude that the evidence in the record concerning the defendant's connection with the Montville Street address was more than sufficient to justify the court in admitting these items into evidence.

There is no error.

In this opinion the other judges concurred.