STATE OF CONNECTICUT *v.* JOSE PEREZ

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

---

Argued November 4, 1980—decision released January 20, 1981

*E. Eugene Spear,* public defender, for the appellant (defendant).

*Robert E. Beach, Jr.,* assistant state's attorney, for the appellee (state).

PETERS, J.  The defendant appeals from the judgment rendered on his conviction for the crime of murder, in violation of General Statutes § 53a-54a. He was indicted by a grand jury and elected to be tried by a three judge court.  The principal issue before the trial court and on this appeal is not whether the defendant, Jose Perez, killed the victim, Helen Toczydlowski, but rather whether he had the mental capacity to justify a finding of guilty of murder.

The facts of the case are essentially undisputed. On August 27, 1977, the defendant saw the victim, who lived in a second floor apartment below his, go to a bathroom off the third floor hallway.  When she left that room he grabbed her from behind, strangled her, dragged her into his apartment, covered her face with her housecoat, and went out to a club to drink beer.  From the club he went to the home

of his brother, Hector, and told him what had happened. After Hector verified the facts, he reported the crime to the Bridgeport police.

The main issue at trial was whether, as a result of mental disease or defect, the defendant, at the time of the killing, lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. The defendant claimed that he lacked such capacity and that, pursuant to General Statutes § 53a-13,[1] he was, therefore, not guilty of the crime. He offered evidence intended to substantiate this claim. While that evidence was not overwhelming, it was arguably sufficient to place upon the state the burden of proving the defendant's sanity. *State* v. *Rossier,* 175 Conn. 204, 209, 397 A.2d 110 (1978); *State* v. *Brown,* 163 Conn. 52, 66–67, 301 A.2d 547 (1972); *State* v. *Vennard,* 159 Conn. 385, 403, 270 A.2d 837 (1970), cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625 (1971). Cf. *State* v. *Roy,* 173 Conn. 35, 43–44, 376 A.2d 391 (1977); *State* v. *Conte,* 157 Conn. 209, 212–15, 251 A.2d 81 (1968), cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 428 (1969). Considered from that vantage point, the focus of the appeal is thus whether there was sufficient basis in fact for the trial court's conclusion that the state had proved the defendant's mental responsibility beyond a reasonable doubt. We hold that there was.

---

[1] General Statutes § 53a-13 provides: "INSANITY AS DEFENSE. In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental disease or defect do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

The defendant raises a second related claim, also based upon his mental capacity. Therein he asserts that, due to his mental disease or defect, he could not reasonably have been found capable of forming the specific intent to kill which is an essential element of the crime of murder under General Statutes § 53a-54a. See General Statutes § 53a-54a (b). As to this claim as well, we hold that the trier of fact could reasonably have found that the state had met its burden of proving beyond a reasonable doubt that the defendant had the requisite intent.

The defendant's two claims differ principally in the degree of mental impairment which they allege. Because both challenge the reasonableness of the findings of the trier of fact, we discuss them together.

Our review of the conclusions of the trier of fact is limited. *State* v. *Zdanis,* 182 Conn. 388, 391–92, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981); *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 (1977); *State* v. *Benton,* 161 Conn. 404, 410, 288 A.2d 411 (1971). That review is the same whether the trier is a judge, a panel of judges, or a jury. *State* v. *DiBattista,* 110 Conn. 549, 148 A. 664 (1930); *State* v. *Frost,* 105 Conn. 326, 135 A. 446 (1926). Upon a verdict of guilty we review the evidence in the light most favorable to sustaining the verdict. *State* v. *Zdanis,* supra, 391–92. It is not necessary for us to determine the reasons which the trier had for concluding that the defendant had substantial capacity both to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of law. Absent a special verdict, we need not consider the route by which the trier arrived at its result.

*State* v. *Zdanis,* supra, 396–97. Appellate review is appropriate, however, to evaluate a claim that there was no basis upon which any reasonable trier of fact could have found as the trier of fact did. *State* v. *Nemeth,* 182 Conn. 403, 410, 438 A.2d 120 (1980); *State* v. *Zdanis,* supra, 391; *State* v. *Ruiz,* 171 Conn. 264, 276–77, 368 A.2d 222 (1976); *State* v. *Benton,* 161 Conn. 404, 406–407, 288 A.2d 411 (1971).

We consider the three judge panel's verdict of guilty, then, to review whether it could reasonably have found, beyond a reasonable doubt, that the defendant was criminally responsible pursuant to the standard in General Statutes § 53a-13, and capable of forming the specific intent to kill. See General Statutes § 53a-54a (a); *State* v. *Zdanis,* supra, 395–96; *State* v. *Holley,* 174 Conn. 22, 25, 381 A.2d 539 (1977).

The defense presented only one witness, a Dr. Mario Perez, who is a psychiatrist and was then employed at Fairfield Hills Hospital.[2] Dr. Perez testified that he had examined the defendant for two hours on September 28, 1977, approximately thirteen months after the killing. During this interview the doctor took an extensive psychiatric and family history. He learned from this interview that the defendant was "slow" in school, had been physically abused by his father, had trouble holding a job, used alcohol heavily, and frequently used LSD, marihuana, and other drugs. The defendant told Dr. Perez that on the day before the killing he drank alcohol heavily and used marihuana,[3] and that on the day of the killing he awoke at 3 a.m. and heard voices urging him to kill. He may have had

[2] Dr. Perez is not related to the defendant.

[3] The doctor was not certain, but thought, at trial, that the defendant had said in the interview that he used marihuana.

visual as well as auditory hallucinations at this time. The doctor testified further that the defendant had reported having experienced such hallucinations, periodically, for six years, since the age of fifteen. The doctor testified that the use of LSD could have caused the defendant to suffer visual or auditory hallucinations and permanent brain damage.

Dr. Perez also examined a report on the defendant by a Dr. Alexander, who had observed the defendant during his eight month hospitalization at the Whiting Forensic Institute, which commenced the day after the killing. He further examined an electroencephalogram of the defendant done there. Subsequent to interviewing the defendant, Dr. Perez jointly interviewed the defendant's brother, Hector, and a friend of the defendant whose name the doctor could not recall at trial.

On the basis of the data obtained from these sources, Dr. Perez found that the defendant was psychotic, probably schizophrenic. It was his opinion that the defendant was psychotic at the time of the killing, and that the defendant's mental illness was accompanied by hallucinations urging him to kill. He therefore concluded that at the time of the killing the defendant lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

The state offered no witness on the subject of the defendant's mental condition or capacity but extensively cross-examined Dr. Perez. In the course of that questioning it introduced the medical records of the defendant during the period of his eight month hospitalization at Whiting, records which

Dr. Perez had not previously examined. The records contained the observations and opinions of numerous experienced medical personnel who had had the opportunity to observe and talk with the defendant. The remarks in the records included the opinions that the defendant at various times pretended to be mentally ill and to be unable to speak or understand English. The records indicated, furthermore, that the defendant did not complain of hallucinations until he had been at Whiting for several months.

In response to the evidence contained in the Whiting records, during his cross-examination, Dr. Perez admitted that the defendant's hallucinations were a subjective symptom the presence of which depended upon the veracity of the defendant's statements to him. He acknowledged that he had not tested the defendant's command of English because the doctor's own native language was Spanish so that it was natural to conduct the interview in that language. Dr. Perez testified, however, that although a subject of psychiatric examination could fake mental illness he did not believe that the defendant had done so, and that even if the defendant were lying about having experienced hallucinations, his diagnosis of the defendant would probably not change. The trier of fact was entitled to find that the cross-examination of Dr. Perez showed his testimony to be inadequately grounded in knowledge of the defendant's condition, medical data, and expertise of interpretation, or was not credible for other reasons.

The trier was entitled, further, to find that the state had met its burden of proving the defendant's sanity beyond a reasonable doubt by introducing

the medical records of his stay at Whiting. These records are fully probative even though they were introduced as part of the cross-examination of Dr. Perez rather than as part of the state's case in chief. In addition, the state could rely on the electroencephalogram done at Whiting, which showed no organic defect.

The trier of fact was entitled to evaluate the conflicting evidence. It was entitled to consider the basis of the testimony of the expert witness. In so doing it might weigh, as it saw fit, his expertise, his opportunity to observe the defendant and to form an opinion, and his thoroughness. It might consider also the reasonableness of his judgments about the underlying facts and of the conclusions which he drew from them. The trier was under no obligation to accept Dr. Perez's belief that the defendant suffered hallucinations as establishing that the defendant did indeed experience them. If it chose to accept that testimony as correct, it was under no obligation to accept Dr. Perez's conclusion that that symptom showed the defendant's legal insanity or incapacity to form a specific intent to kill.

The psychiatric data, in sum, provide a basis upon which a reasonable trier of fact could have found that the defendant, at the time of the killing, had sufficient mental capacity to be convicted of the crime of murder. Even if the trial court had found that the defendant suffered from a mental disease, undifferentiated schizophrenia without organic disorder, it could consistently have found that the defendant did appreciate the wrongfulness of his conduct and could have conformed his conduct to

the requirements of the law, and could have formed a specific intent. General Statutes § 53a-13; cf. *State* v. *Toste,* 178 Conn. 626, 424 A.2d 293 (1979).

There is no error.

In this opinion the other judges concurred.