STATE OF CONNECTICUT *v.* HAROLD JACOBOWITZ
(11795)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued June 8—decision released September 4, 1984

*Richard R. Brown,* for the appellant (defendant).

*Irving L. Aronson,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti,* state's attorney, for the appellee (state).

GRILLO, J. The defendant, Harold Jacobowitz, was charged with criminal attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a.[1] He

---

[1] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or

pleaded not guilty, was tried by a jury of six, convicted as charged, and sentenced to eighteen years in prison. From that conviction, the defendant appeals, claiming the following as error: (1) the court's failure to charge sua sponte on the affirmative defense of extreme emotional disturbance; (2) the trial court's failure to charge sua sponte on lesser included offenses; (3) ineffective assistance of counsel; (4) the admission of evidence of past crimes; and (5) the lack of sufficient facts to return a guilty verdict.

The following facts could reasonably have been found by the jury: Sometime prior to October, 1981, the defendant and his wife were divorced. In October, the defendant's ex-wife moved to a trailer park owned by the victim Robert Viens. The defendant's ex-wife

---

enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a), it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

"[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime. . . ."

and the victim developed a friendship and spent time together both at and outside the trailer park. The existence of this relationship enraged the defendant. Prior to October, he had made numerous phone calls to the victim, threatening him with violence if he allowed the defendant's ex-wife to move into the park. Between October, 1981, and April, 1982, the defendant, on many occasions, made threatening phone calls both to his ex-wife and to the victim. He also threatened the victim on one occasion in person at a church in January, 1982.

The incident which led to the charges against the defendant occurred on April 7, 1982. The defendant was parked in a truck, across the street from his ex-wife's trailer. The defendant had been waiting for a ten to fifteen minute period when his ex-wife and the victim arrived together at the trailer. The ex-wife entered the trailer, and the victim remained outside. The defendant, becoming angry at seeing his ex-wife with the victim, drove his truck toward the victim. The truck hit a parked car, which hit the victim. The defendant then backed his truck up and drove the car forward into the trailer, knocking it off its foundation. As the defendant again backed up, the corner blade of the snowplow attachment clipped the victim and knocked him to the ground, where a wheel of the truck ran over his leg.

We first address the defendant's contention that the trial court erred in failing to charge sua sponte on the affirmative defense of extreme emotional disturbance. See footnote 1, supra, General Statutes § 53a-54a. The defendant bases this claim on a statement by this court that "[a]lthough extreme emotional disturbance is an affirmative defense, it requires no special plea, notice or other formal assertion by a defendant." See *State v. Marino,* 190 Conn. 639, 651 n.11, 462 A.2d 1021 (1983).

This court, in *State* v. *Elliott,* 177 Conn. 1, 6, 411 A.2d 3 (1979), adopted the holding in *Patterson* v. *New York,* 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977), that extreme emotional disturbance is an affirmative defense and that the burden of proof is on the defendant. "The purpose of the extreme emotional disturbance defense is to permit the defendant to show that his actions were caused by a mental infirmity not arising to the level of insanity, and that he is less culpable for having committed them." *State* v. *Elliott,* supra, 6, quoting *People* v. *Patterson,* 39 N.Y.2d 288, 302, 347 N.E.2d 898 (1976). Since manslaughter predicated on the mitigating circumstance of extreme emotional distress is a lesser included offense of murder; see *State* v. *Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980); the four-prong test of *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980), must be satisfied before a defendant is entitled to a charge on extreme emotional distress. Under the first prong of *Whistnant,* a defendant is entitled to an instruction "if, and only if . . . (1) an appropriate instruction is requested by either the state or the defendant . . . ." *State* v. *Whistnant,* supra, 588. Failure by the defendant in the present case to request that the trial court charge on extreme emotional distress coupled with the paucity of evidence proffered to substantiate such a charge justified the trial court's failure so to charge. See *State* v. *Jacobs,* 194 Conn. 119, 128 n.4, 479 A.2d 226 (1984).

The defendant also claims that the trial court erred in not charging sua sponte on the lesser offenses included under criminal attempt to commit murder.[2] The defend-

[2] The defendant has stated that these include criminal attempt to commit manslaughter in the first degree in violation of §§ 53a-49 and 53a-55 (a) (1) and (2), attempted assault in the first degree in violation of §§ 53a-49 and 53a-59 (a) (1) or (2), attempted assault in the second degree in violation of §§ 53a-49 and 53a-60 (a) (1), (2) or (3), attempted assault in the third degree in violation of §§ 53a-49 and 53a-61, reckless endangerment in the first degree in violation of § 53a-63, and reckless endangerment in the second degree in violation of § 53a-64.

ant's failure to request a charge on these lesser offenses supports the trial court's decision to limit its instruction to criminal attempt to commit murder. See *State* v. *Jacobs,* supra; *State* v. *Whistnant,* supra, 588. Yet the defendant claims that, even without the request, the court should have made the charge sua sponte because the right to a charge on lesser offenses implicates the constitutional right to a fair trial. This court does not recognize the right to have a jury charged on lesser included offenses to be one of constitutional dimension: "There is no fundamental constitutional right to a jury instruction on every lesser included offense suggested by the evidence or by the information, indictment and bill of particulars." *State* v. *Whistnant,* supra, 583.

Little need be said relative to the defendant's third claim of ineffective assistance of counsel. We have repeatedly held that ineffective assistance claims are more properly pursued in a petition for a new trial or a writ of habeas corpus. *State* v. *Tirado,* 194 Conn. 89, 478 A.2d 606 (1984); *State* v. *Young,* 191 Conn. 636, 653–54, 469 A.2d 1189 (1983); *State* v. *Mason,* 186 Conn. 574, 578–79, 442 A.2d 1335 (1982). In this case there is nothing in the record from which we can determine whether trial counsel acted incompetently. An ineffective assistance claim cannot be properly evaluated simply by perusing the transcript. *State* v. *Young,* supra, 653.

The defendant's fourth claimed error involves the trial court's allowing evidence of other crimes to be admitted into evidence. During the course of the trial, the state introduced the following evidence: The victim was allowed to testify that between October, 1981, and April, 1982, the defendant made over two hundred threatening telephone calls to the victim; that at some point in that period, the defendant threw a cement block at his ex-wife's trailer; that on March 1, 1982,

the defendant phoned his ex-wife, and the victim taped the threatening conversation, which tape was admitted into evidence; and that on August 29, 1982, a threatening incident occurred at a church. On appeal, the defendant argues that the decision of the court to allow this allegedly inflammatory testimony was overwhelmingly prejudicial to him and amounted to a manifest abuse of discretion. We disagree.

" ' "As a general rule, evidence of guilt of other crimes is inadmissible to prove that a defendant is guilty of the crime charged against him." ' " *State* v. *Hauck,* 172 Conn. 140, 143–44, 374 A.2d 150 (1976); *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982). It is recognized that such evidence may be admitted for other purposes such as to prove intent, identity, malice or a system of criminal activity. It is, however, the function of the trial court to exercise judicial discretion and exclude the proffered evidence if its probative value is outweighed by its prejudicial tendency. *State* v. *Falby,* supra, 23; *State* v. *Holliday,* 159 Conn. 169, 173, 268 A.2d 368 (1970).

Prior to the introduction of testimony concerning the brick throwing at the ex-wife's trailer, the trial court instructed the jury as follows: "I'll allow the testimony and I will caution the jury at this point that the limited purpose for which this line of testimony is being admitted is as it may relate to the intention or any motive on the part of the defendant. That's the limited scope of the admissibility of the evidence to this and to the prior question along the same line." Although this instruction was not repeated until the charge to the jury, defense counsel himself reiterated the instruction to the jury when the incidents of August, 1982, were being introduced: "Your Honor instructed the jury that the matters being testified along these lines were for the purpose of determining the defendant's intent at the time of the incident."

An examination of the record convinces us that the evidence in question, encompassing motive and intent, was introduced for a valid purpose within the guidelines stated in *State* v. *Falby,* supra, and *State* v. *Hauck,* supra. Before the evidence was received, the trial court heard the evidence and determined that it could be admitted on the claimed grounds, and that its probative value outweighed its prejudicial effect. Finally, the trial court properly instructed the jury as to the limited purpose for which the evidence could be used. Since the trial court took all proper precautions with regard to the challenged evidence, we find no error in its admission.

Lastly, the defendant claims that the trial court erred when it failed to grant his motion for judgment of acquittal in that there were insufficient facts from which the jury could reasonably conclude that the defendant intended to kill the victim as opposed to scaring or injuring him. We disagree.

"When a jury verdict is challenged on the ground that the evidence is insufficient to sustain the verdict, the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. *State* v. *Jones,* 173 Conn. 91, 376 A.2d 1077 [1977]; *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 [1977]. In ruling on such a motion, the evidence presented at the trial must be given a construction most favorable to sustaining the jury's verdict. *State* v. *Chetcuti,* supra. If, however, the evidence is insufficient to meet the burden of proof of guilt beyond a reasonable doubt, bearing in mind that the state has the burden of establishing by such proof every essential element of the crime charged, the verdict must be set aside. *State* v. *Benton,* 161 Conn. 404, 406, 288 A.2d 411 [1971]; *State* v. *Kelsey,* 160 Conn. 551, 553, 274 A.2d 151 [1970]; *State* v. *McGinnis,* 158

Conn. 124, 129, 256 A.2d 241 [1969]." *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978).

The central issue in this portion of the defendant's appeal is the question of whether there was sufficient evidence for the jury to infer intent. " '[I]ntention is a mental process, and of necessity it must be proved by the statement or acts of the person whose act is being scrutinized.' " *State* v. *Mazzadra,* 141 Conn. 731, 735, 109 A.2d 873 (1954). From the evidence that the defendant threatened his victim on over two hundred occasions, waited in the truck outside his ex-wife's trailer for the victim for ten to fifteen minutes on the day in question, and drove his truck at the victim two times, the jury could reasonably and logically infer that the defendant intended to kill the victim.

There is no error.

In this opinion the other judges concurred.