Barbara KELSEY

v.

The SHERATON CORPORATION and Sheraton Hartford Corporation.

Civ. No. H–84–1103(MJB).

United States District Court, D. Connecticut.

Aug. 18, 1986.

Jeffrey C. Pingpank, Cooney, Scully & Dowling, Hartford, Conn., for plaintiff.

Albert Zakarian, Day, Berry & Howard, Felix Springer, Hartford, Conn., for defendants.

## RULING ON MOTION TO DISMISS PENDENT STATE LAW CLAIMS

BLUMENFELD, Senior District Judge.

Plaintiff Barbara Kelsey, a former employee of the Sheraton Hotel in Hartford, Connecticut, brought suit against The Sheraton Corporation and Sheraton Hartford Corporation challenging her employment termination. The first count of her complaint arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and alleges discrimination based on race and sex, including pregnancy. It is this claim that provides the basis for federal jurisdiction in this case.[1]

In addition to her federal claim, plaintiff has appended three claims arising under state law. Count Two alleges intentional infliction of emotional distress; Count Three alleges wrongful discharge; and Count Four alleges "outrageous discharge."

Defendants moved for summary judgment on the pendent state law claims. That motion was referred to a magistrate, as authorized by 28 U.S.C. § 636(b)(1)(B) and Rule 1(C)(1) of the Local Rules for United States Magistrates. The magistrate considered the state law claims on their merits and recommended that the motion for summary judgment be granted.

---

1. There is no diversity of citizenship to provide an independent basis for federal jurisdiction over these claims. Both the plaintiff and one of the defendants, Sheraton Hartford Corp., are citizens of Connecticut.

**12**

The case is now before the court on plaintiff's objection to the magistrate's recommended ruling. A hearing before the court was held on April 7, 1986.

### Discussion

■ Upon timely objection to a magistrate's recommended ruling on a dispositive motion, such as a motion for summary judgment, the district judge responsible for the case must make a *de novo* determination of the portions of the proposed decision to which objection is made and may accept, reject, or modify the recommended ruling in whole or in part. 28 U.S.C. § 636(b)(1); Rule 2, Local Rules of United States Magistrates; *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). In making that determination, the court is not bound by the findings of the magistrate and may give the recommended ruling such weight and consideration as it deems appropriate. *Raddatz*, 447 U.S. at 676, 100 S.Ct. at 2412.

■ In moving for summary judgment on the plaintiff's state law claims in this case, the defendants focused on the merits of thos claims. Accordingly, the magistrate considered the claims on their merits and on that basis recommended that summary judgment be granted. While from an academic standpoint the merits of plaintiff's state law claims have received careful consideration by counsel and by the magistrate, the fact that this has been done cannot compel the court to exercise pendent jurisdiction. It is well-settled that the parties to an action cannot agree to confer subject matter jurisdiction on a federal court. *E.g., American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951); *Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 960 (3d Cir. 1980). As a result of the defendants' proceeding full speed ahead to attack the merits of these claims from the start, the threshold issue of the propriety of exercising jurisdiction over these claims at all was never reached. I find that issue dispositive.[2]

■ Pendent jurisdiction permits a federal court to adjudicate state claims that are presented together with a federal claim, provided that the claims arise out of a common nucleus of operative fact and are sufficiently related that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Where those conditions are met, the federal court has the power to decide the state law claims. The federal court need not exercise that power in every instance, however. Pendent jurisdiction is a matter within the discretion of the court, and is not a plaintiff's right. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, *Pollard v. Hartford*, 539 F.Supp. 1156 (D.Conn.1982).

■ Where the considerations of judicial economy, convenience and fairness that constitute the primary justifications for pendent jurisdiction are not present, a federal court can and should decline jurisdiction. Considerations of comity and justice to the parties may also require a federal court to refrain from making needless decisions of unsettled state law. *Gibbs* 383 U.S. at 726, 86 S.Ct. at 1139. Thus, rather than rushing in to decide claims based on novel theories of state law, a federal court is often well-advised to separate the federal claims from the state claims and to dismiss the latter, leaving their resolution to the more appropriate forum of a state court.

In this case, along with her Title VII employment discrimination claims, plaintiff has brought two tort claims and a contract claim under state law. As the magistrate's recommended ruling makes clear, each of plaintiff's state law claims rests on theories which have either not been addressed or not been settled by the Connecticut courts.

---

2. At the hearing on plaintiff's objection to the magistrate's recommended ruling, the court several times raised the issue of the propriety of maintaining these state claims in federal court under pendent jurisdiction. The parties were offered an opportunity to file briefs on the subject, but declined, asserting that papers had already been submitted on that issue. Although no such argument is to be found in the various briefs submitted by the parties, they were given notice of the court's concern with this issue, and it will be addressed here.

In Count Two, plaintiff makes a tort claim of intentional infliction of emotional distress. The availability of such a claim in the employment context has been a subject of recent dispute in Connecticut. *Compare Murray v. Bridgeport Hospital,* 40 Conn. Sup. 56, 480 A.2d 610 (1984) with *Collins v. Gulf Oil Corp.,* 605 F.Supp. 1519 (D.Conn. 1985); *see also Paradise v. Times Fiber Communications, Inc.,* 12 Conn.L.Trib. No. 31, p. 22 (Super.Ct. June 27, 1986). Neither party has cited a decision of a Connecticut appellate court on this subject, and it is unclear precisely what position the state courts would take.

In Count Four, plaintiff alleges the tort of "outrageous discharge." Although other states have recognized such a tort, the parties have not brought to the attention of the magistrate or the court any Connecticut case sustaining such a cause of action.

Both of these tort claims, in addition to requiring novel extensions of state law, involve very different issues than does plaintiff's Title VII claim. In order to recover under either of these theories, plaintiff would have to submit proof focusing on the *manner* in which she was fired, rather than the *reason* that she was fired, which is the focus of Title VII. Thus, they are quite likely to confuse the issues and to complicate the case.

In Count Three, plaintiff essentially alleges a claim for wrongful discharge. Plaintiff had an oral contract for employment for an indeterminate period. The ordinary rule in Connecticut is that an employment contract without a definite term is terminable at the will of either party, with or without cause. *Sheets v. Teddy's Frosted Foods,* 179 Conn. 471, 474, 427 A.2d 385 (1980). Recent Connecticut case law appears to provide three theories on which a plaintiff may be able to avoid this result in appropriate cases: 1) proof that what appears to be an at-will employment contract is not actually terminable at will because of contract terms which can be implied from the dealings between the parties, *Lincoln v. Sterling Drug, Inc.,* 622 F.Supp. 66 (D.Conn.1985); *Finley v. Aetna Life & Casualty Co.,* 5 Conn.App. 394, 499 A.2d 64, *cert. granted,* 198 Conn. 802, 501 A.2d 1213 (1985); 2) an action for breach of an implied covenant of good faith and fair dealing found in the employment contract, even if at-will, *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 479 A.2d 781 (1984); and 3) an action in tort for wrongful discharge in violation of an important public policy. *Sheets,* 179 Conn. 471, 427 A.2d 385. Plaintiff has invoked all of these theories, each of which as applied to this case poses significant and complex questions of unsettled state law, best addressed in the first instance by the Connecticut courts.

Plaintiff argues that she was not an at-will employee because representations made to her by her superiors at Sheraton and statements in Sheraton's employee manual and handbook created an implied contractual obligation on the part of Sheraton not to terminate her employment without just cause. The extent to which such statements can transform what appears to be an at-will employment contract into a contract which limits the employer's right to fire employees is an open question in Connecticut at the moment. The state Supreme Court now has under consideration a case on that subject, *Finley v. Aetna Life & Casualty Co., cert. granted,* 198 Conn. 802, 501 A.2d 1213 (1985). *See also, e.g., Bilbao v. Wyatt,* 9 Conn.L.Trib. No. 45, p. 14 (Super.Ct.1983). While the nature of the statements that Sheraton made in its printed materials to employees give plaintiff a relatively convincing case that Sheraton has committed itself to observing some standard of cause before firing employees, that is a determination that could more appropriately be made by the state courts, with the potential guidance of the Supreme Court's opinion in *Finley.*

In both *Magnan* and *Sheets,* the Connecticut Supreme Court has recognized causes of action for wrongful discharge even for at-will employees where the discharge violates public policy. *Sheets* held that an employee could sue in tort to recover damages for a discharge based on a "demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of pub-

14

lic policy." *Sheets*, 179 Conn. at 475, 427 A.2d 385. The clearest application of this doctrine is where the reason for the dismissal violates a state statute, although the court did not decide whether such a violation is required. *Id.*

In *Magnan*, the Supreme Court recognized a limited right of action for at-will employees for breach of an implied covenant of good faith and fair dealing. The court expressly refused to imply a covenant of good faith and fair dealing into every at-will contract such that no employee could be terminated without just cause, however, and refused to extend protection to the plaintiff in the case before it. Thus, the discussion of the court's willingness to find such a covenant in appropriate cases and the extent of a right of action for breach thereof was dictum. Furthermore, the court appeared to limit the reach of such an action to the same kinds of situations in which *Sheets* applies.

In both *Sheets* and *Magnan*, the Connecticut Supreme Court was careful to circumscribe the extent to which it was expanding the law. The applicability of those precedents to a case such as the present one is particularly unclear. The Connecticut courts have, for the most part, refused to allow these types of actions to challenge discriminatory discharges, on the ground that the state anti-discrimination law, Conn. Gen.Stat. § 46a–60 *et seq.*, provides the statutory framework for employment discrimination claims, and that no private right of action exists outside of this statutory framework. *Atkins v. Bridgeport Hydraulic Co.*, 5 Conn.App. 643, 648, 501 A.2d 1223 (1985); *Reed v. Product Identification Corp.*, Civil No. H–84–9 (D.Conn. April 26, 1984) [Available on WESTLAW, DCT database] (Ruling on Motion to Dismiss); *Glassover v. Audiotronics, Inc.*, 10 Conn.L.Trib. No. 20, p. 11 (Super.Ct. Jan. 17, 1983). Thus, it appears that the Connecticut courts would not treat a discriminatory discharge as a violation of public policy of the type required under either *Sheets* or *Magnan*. This issue, again, is one best addressed by the state courts.

These issues of the rights of at-will employees are of wide-ranging significance and the state has a substantial interest in deciding these questions. In addition, these three counts all involve different issues of proof and of law than the Title VII discrimination claim.

A cogent summary of the reasons supporting the dismissal of state law claims such as these can be found in *Ball v. Connecticut Bank and Trust Co.*, 404 F.Supp. 1, 3 (D.Conn.1975), a truth-in-lending case. While this employment discrimination obviously differs legally from a truth-in-lending case, the rationale for dismissing pendent state claims is equally applicable. In *Ball*, Judge Newman stated:

> Although the federal forum may be at least equally appropriate for pursuit of federal truth in lending remedies [as a state forum] ... Congress could not have intended a concomitant, wholesale federal review of those ordinary state law debtor-creditor controversies lacking jurisdictional foundation in 28 U.S.C. § 1332.... The two court systems are simply not functional equivalents; encumbering federal truth in lending litigation with pendent state issues as of course would seem unwarranted imposition upon this Court, cf. *United Mineworkers of America v. Gibbs, supra,* [383 U.S.] at 726–727 [86 S.Ct. at 1139], and in those commonly encountered instances of novel state law questions would ignore fundamental considerations of comity and fairness strongly counselling authoritative state court determination....

*Ball*, 404 F.Supp. at 2–3 (citations omitted).

█ Because exercising pendent jurisdiction over plaintiff's state claims in this case has the potential to complicate and confuse the issues at trial, to obscure the federal claim, and to involve the federal court in making multiple determinations of important unsettled state law, I decline as a matter of discretion to do so.

### Conclusion

Having considered the defendants' motion for summary judgment *de novo* upon

plaintiff's objection to the magistrate's recommended ruling, the motion for summary judgment is denied and, in accordance with the foregoing discussion, plaintiff's pendent state law claims, contained in Counts Two, Three and Four of her complaint, are dismissed.

SO ORDERED.